IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 4, 2021

**STATE OF TENNESSEE v. CEDRICK LEROY SHELTON**

**Appeal from the Circuit Court for Chester County**
**No. 19CR77   Donald H. Allen, Judge**

_____

**No. W2020-00897-CCA-R3-CD**

_____

Defendant, Cedrick Leroy Shelton, was convicted by a jury of simple possession of marijuana, possession of more than 0.5 ounces of marijuana with intent to deliver, possession of a firearm with intent to go armed during the commission of a dangerous felony, possession of drug paraphernalia, and improper display of a license plate. Defendant also pled guilty to two counts of possession of a firearm by a convicted felon. The trial court imposed an effective fourteen-year sentence, as a Range II multiple offender, to be served in the Department of Correction. On appeal, Defendant argues: that the evidence was insufficient to support his convictions for possession of more than 0.5 ounces of marijuana with intent to deliver and possession of a firearm with intent to go armed during the commission of a dangerous felony; that the jury rendered inconsistent verdicts; and that his sentence was excessive. Following our review of the entire record and the briefs of the parties, we affirm the judgments of the trial court but remand for correction of a clerical error on the judgment forms for counts seven and eight to reflect that Defendant pled guilty to those counts rather than being found guilty by a jury. Additionally, the judgment form in count eight should reflect that it is merged with count seven.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**

**Affirmed in Part; Reversed in part; Remanded**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, JR., J., joined.

Jeff Mueller, Trenton, Tennessee, for the appellant, Cedrick Leroy Shelton.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

This case arises from a traffic stop, during which Defendant was found to be in possession of approximately 145 grams (more than 0.5 ounces) of marijuana, a loaded handgun, and an extra magazine clip. A Chester County grand jury indicted Defendant for possession of more than 0.5 ounces of marijuana with intent to sell, possession of more than 0.5 ounces of marijuana with intent to deliver, two counts of possession of a firearm with intent to go armed during the commission of a dangerous felony, possession of drug paraphernalia, improper display of a license plate, and two counts of possession of a firearm by a convicted felon. At Defendant's trial on these charges, the following evidence was presented: On the evening of August 3, 2018, Deputy Jason Walker of the Chester County Sheriff's Office pulled Defendant over because his license plate was not illuminated. He approached Defendant's vehicle and immediately smelled the odor of marijuana. Deputy Walker advised Defendant that he would be searching the vehicle and asked if he would find anything. Defendant denied having anything in the vehicle but admitted that he had recently smoked marijuana. Deputy Walker asked Defendant to step out of the car, and he was "patted down for evidence." Defendant then told Deputy Walker that there was "weed" in the armrest console. Deputy Walker looked inside the console and found two bags of a "green leafy substance," that he believed to be marijuana, and a loaded firearm with an extra magazine clip. He also located a set of digital scales under the driver's seat of the vehicle. Thereafter, Deputy Walker took Defendant into custody.

Special Agent Carter Depew of the Tennessee Bureau of Investigation, Forensic Chemistry Unit, analyzed the two bags of green leafy substance recovered from Defendant's car and determined that the two bags contained approximately 145 grams of marijuana.

Justin Denbow, a narcotics investigator with the Chester County Sheriff's Office, estimated that he had participated in between thirty and fifty undercover drug buys and executed approximately twenty search warrants involving narcotics. He explained that there are usually two grades of marijuana: "Loud," which usually sells for twenty-dollars per gram, and "regular" marijuana that sells for ten dollars per gram. Investigator Denbow testified that it would not be unusual for someone who sold marijuana to have more than one kind of the drug. He explained that drug dealers use digital scales to weigh their product, and users also have digital scales to make sure they do not get "shorted" when making a purchase. Investigator Denbow testified that he would expect a marijuana user to have rolling papers and possibly a pipe or scales. When asked if weapons play a role in narcotics trafficking, he said:

> Weapons are used for protection mainly. A lot of times, during the
> - - the initiation of a drug sale, a lot of people get robbed, either for

- 2 -

the dope or for the money. So, most of the time, drug dealers will have a weapon nearby or somebody they're with will have a weapon. Weapons are also used in trade for drugs a lot of the times as well.

Based on his training and experience, along with the weight of the marijuana, the scales, and weapon, it was Investigator Denbow's opinion that Defendant possessed the marijuana in this case for resale.

On cross-examination, Investigator Denbow agreed that individuals sometimes purchase marijuana in bulk and receive a discount on the purchase price. He said that "Cush" is a synthetic grade of marijuana and is considered to be better than average. On redirect examination, Investigator Denbow testified that individuals typically buy marijuana in bulk for the purpose of resale.

Calyn Oakley, Defendant's stepson, testified that the .40-caliber Smith & Wesson handgun found in Defendant's car during the traffic stop belonged to him, not the Defendant. He said that he had been doing some "target shooting" at Defendant's house the day before Defendant's arrest. Mr. Oakley asserted that he left the gun at Defendant's house, and Defendant was going to return it to him. He testified that Defendant frequently used marijuana, "about like somebody smoking a pack of cigarettes."

On cross-examination, Mr. Oakley testified that he never told police before trial that the gun belonged to him. He did not testify on Defendant's behalf at the preliminary hearing because he could not afford to take off from work. Mr. Oakley testified that he had purchased the weapon at Bradley's Pawn and Gun in Savannah, Tennessee.

Defendant testified that he had been employed as a forklift operator for ten years. He said that the gun found in his vehicle during the traffic stop belong to his stepson, and he was returning it to him. Defendant admitted that the scales and marijuana belonged to him, but he testified that they were for personal use. He said that he needed the scales "to keep from getting beat" or "[ripped] off."

Defendant testified that he had been smoking marijuana daily and "heavily" for at least ten to fifteen years. He said that the two bags of marijuana found in his car contained "regular weed" and "Cush." Defendant explained: "Regular weed would be your lower-grade marijuana, and your Cush would be your higher grade." He said that he had purchased the two bags of marijuana for personal use from one of his "associates" approximately twenty to thirty minutes before the traffic stop. Defendant testified that he paid $200 for the small bag of Cush and $250 for the large bag of regular marijuana. He said that it usually took him two to three days to consume the amount of marijuana contained in the two bags.

On cross-examination, Defendant testified that he and his stepson were employed by the same company, and he planned to return the gun to his stepson at work. He said that he purchased the marijuana found in his car from John Holmes, and he usually purchased marijuana from Mr. Holmes once or twice a week. Defendant said that he smoked the marijuana rolled into a cigar, and he normally smoked around 100 cigars in three days.

Based on this evidence, the jury convicted Defendant of the lesser-included offense of simple possession of marijuana (count one); possession of more than 0.5 ounces of marijuana with intent to deliver (count two); one count of possession of a firearm with intent to go armed during the commission of a dangerous felony (count four); possession of drug paraphernalia (count five); and improper display of a license plate (count six). Defendant was found not guilty in count three of possession of a firearm with intent to go armed during the commission of the dangerous felony in count two, and he pled guilty to the two counts of possession of a firearm by a convicted felon in counts seven and eight.

The presentence report was entered into evidence at the sentencing hearing along with certified copies of the judgments for Defendant's prior drug convictions. Valerie Viers, an employee of the Tennessee Department of Correction, testified that she prepared the presentence report in this case. She said that Defendant had maintained full-time employment for at least nine-and-a-half years. For four of those years he had worked for Action Tie as a forklift operator. Ms. Viers testified that Defendant was placed on probation for a previous conviction, and she was unaware of any probation violations that were filed against him. She said that Defendant reported heavy use of marijuana and that he first used the drug in 2001. In the questionnaire for the presentence report, Defendant reported that he had not used marijuana since January 8, 2020. Ms. Viers testified that Defendant was very respectful and compliant, and he answered every question that she asked him.

Dalton Wicker, the plant manager for Action Tie, testified that he met Defendant four years earlier when they both began working for Action Tie, and he had been Defendant's direct supervisor for the last two years. He said that Defendant was a good employee who was present at work every day. Mr. Wicker testified that he was not aware of Defendant being high at work. On cross-examination, Mr. Wicker testified that he was unaware of Defendant's marijuana use, and Action Tie did not conduct drug screens. He said that he had never smelled the odor of marijuana on Defendant.

Prentice Burdine, Defendant's step-father, testified that he had known Defendant for thirty-five years. He was aware of some of Defendant's prior drug offenses but was not aware that Defendant sold drugs. Mr. Burdine testified that Defendant began working as a young man and always held a job. He said that Defendant took care of his family and never gave Mr. Burdine any trouble.

Jessica Shelton, Defendant's wife testified that she and Defendant had been married for ten years. She said that Defendant had problems in the past with marijuana and cocaine use. Ms. Shelton testified that Defendant smoked marijuana daily, several times per day. She said that Defendant was good to her and was a good father who helped raise her two children and her two nieces.

The trial court considered the principles of sentencing, the arguments of counsel as to sentencing alternatives, the evidence presented at trial and at the sentencing hearing, and the nature and characteristics of the criminal conduct involved. The trial court noted that Defendant said he had been using marijuana for fifteen years or longer and had never sought treatment. The trial court said: "He's just continued to smoke marijuana, to use marijuana, to possess marijuana, and to sell marijuana."

The trial court applied two enhancement factors, including Defendant's previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, and Defendant, before trial or sentencing failed to comply with the conditions of a sentence involving release into the community. The trial court gave great weight to Defendant's history of criminal behavior. The trial court considered Defendant's work history as a mitigating factor. The trial court considered that Defendant had committed new offenses while on some type of release into the community, "either felony probation or misdemeanor probation," even though his probation was not violated in those cases. Therefore, the trial court concluded that measures less restrictive than confinement have frequently or recently been applied to Defendant without success making Defendant a poor candidate for probation or alternative sentencing. The trial court also found that Defendant's extensive history of criminal activity justified consecutive sentencing.

The trial court found that Defendant was a Range II multiple offender based on his four previous felony convictions and imposed a sentence of eleven months, twenty-nine days in count one; four years in count two; six years in count four; eleven months, twenty-nine days in in count five; thirty days in count six; ten years in count seven; and ten years in count eight. The trial court merged count one into count two and ordered the sentences in counts two, five and six to be served concurrently with each other for an effective four-year sentence. The trial court further ordered the sentences in counts four, seven, and eight to be served concurrently with each other for an effective ten-year sentence. Finally, the trial court ordered the four-year sentence in counts two, five, and six to be served consecutively to the ten-year sentence in counts four, seven, and eight for a total effective sentence of fourteen years to be served in the Department of Correction as a Range II multiple offender. It is from these judgments that Defendant now appeals.

**Analysis**

**I.      Sufficiency of the Evidence**

Defendant contends that the evidence was insufficient to support his conviction for possession of more than 0.5 ounces of marijuana with intent to deliver in count two. He also argues that the jury's verdicts for simple possession of marijuana in count one and possession of more than 0.5 ounces in marijuana with intent to deliver in count two are inconsistent and therefore, his conviction in count two is invalid. Defendant further contends that without a valid conviction in count two, his conviction for possession of a firearm with intent to go armed during the commission of a dangerous felony in count four is likewise invalid. He does not challenge his remaining convictions. The State responds that the evidence is sufficient to support Defendant's convictions and that consistency between verdicts on separate counts of an indictment is not necessary.

When a defendant challenges the sufficiency of the evidence, this court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether *any* rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In Tennessee, "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4). A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). The "intent" element of the statutes may be inferred "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." T.C.A. § 39-17-419.

Such "other relevant facts" that can give rise to an inference of intent to sell or deliver include the absence of drug paraphernalia, the presence of a large amount of cash, the packaging of the drugs, and the street value of the drugs. *See State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (finding that the absence of drug paraphernalia and the manner of packaging of drugs supported an inference of intent to sell); *Matthews*, 805 S.W.2d at 782 (finding that testimony concerning amount and street value of drugs was admissible to prove the defendant's intent); *State v. Charles Benson*, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *8 (Tenn. Crim. App., at Nashville, Oct. 8, 2004) (finding that the absence of drug paraphernalia and testimony of value and amount of 3.3 grams of cocaine sufficient for the jury to infer the defendant's intent to sell and deliver it), *perm. app. denied* (Tenn. May 23, 2005).

Viewing the evidence in the light most favorable to the State, the proof shows that Defendant had more than 0.5 ounces (145 grams) of marijuana in his possession when he was stopped by Deputy Walker. There were two different grades of the drug in two separate bags, along with digital scales and a loaded handgun with an extra magazine clip. Investigator Denbow testified that it would not be unusual for someone who sold marijuana to have more than one kind of the drug. He further testified that based on his training and experience, the amount of marijuana seized from Defendant's car was in excess of that in which someone would have for personal use. Defendant testified that he paid $450 for the two bags of marijuana, and there was no proof at trial that Defendant had any drug paraphernalia in his car that could be used for consumption of marijuana. *Benson*, 2004 WL 2266801, at *3. From this proof, a jury could find beyond a reasonable doubt that Defendant possessed the marijuana with intent to deliver it.

As for Defendant's argument that the verdicts were inconsistent and that his conviction for possession of more than 0.5 ounces of marijuana with intent to deliver is invalid,

> [c]onsistency in verdicts for multiple count indictments is unnecessary as each count is a separate indictment. Therein lies the essential reasoning. An acquittal on one count cannot be considered res judicata to another count even though both counts stem from the same criminal transaction. This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned.

*Wiggins v. State*, 498 S.W.2d 92, 93-94 (Tenn. 1973); *see State v. Davis*, 466 S.W.3d 49, 77 (Tenn. 2015); *State v. Jemel Johnson*, No. M2018-01346-CCA-R3-CD, 2020 WL 2079268, at *12-13 (Tenn. Crim. App., at Nashville, April 30, 2020) *no perm. app. filed*. Defendant's claim is not a basis for relief. *Davis*, 466 S.W.3d at 77.

Additionally, since there was sufficient evidence to support Defendant's conviction for possession of marijuana with intent to deliver, the evidence is likewise sufficient to support Defendant's conviction for possession of a firearm with intent to go armed during the commission of a dangerous felony. *See* T.C.A. § 39-17-1324(a). The crime of possession with intent to sell or distribute a controlled substance is a dangerous felony. T.C.A. §39-17-1324(i)(1)(L). As previously noted, Defendant was in possession of a loaded handgun when he was stopped by Deputy Walker and found to be in possession of marijuana. Defendant is not entitled to relief on this issue.

Although not raised by either party, we note that Defendant's conviction for possession of a firearm by a convicted felon in count eight should be merged with his conviction for the same offense in count seven since there was only one weapon involved in the offense. "Merger . . . is required when a jury returns guilty verdicts on two counts that represent alternative theories of the same offense." *State v. Berry*, 503 S.W.3d 360, 362 (Tenn. 2015); *see State v. Ziberia Marico Carero*, No. E2015-00140-CCA-R3-CD, 2015 WL 9412836, at *5-8 (Tenn. Crim. App., at Knoxville, De. 22, 2015) *perm. app. denied* (Tenn. May 5, 2016). Therefore, we remand the case for entry of amended judgments and order the trial court to merge count eight into count seven.

## II.    Sentencing

Defendant argues that the trial court erred by imposing more than the minimum sentence for his convictions, by ordering partial consecutive sentencing, and by denying alternative sentencing. The State responds that the trial court properly sentenced Defendant to an effective fourteen-year sentence to be served in confinement.

Initially, we point out that Defendant failed to support his sentencing issues with any citation to authority. Tennessee Rule of Appellate Procedure 27(a)(7) requires that briefs contain arguments with regard to each issue presented that include "citations to the authorities ... relied on." *See also* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument [or] citation to authorities ... will be treated as waived" on appeal). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Board of Prof'l Responsibility,* 301 S.W.3d 603, 615 (Tenn. 2010); *State v. Cross*, 362 S.W.3d 512, 526 (Tenn. 2012). Nevertheless, we will address Defendant's sentencing issues.

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's

sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v. Caudle*, our supreme court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012). Under the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing; and
> (8) The result of the validated risk and needs assessment conducted by the department [of Correction] and contained in the presentence report.

T.C.A. § 40-35-210(b).

In misdemeanor sentencing, the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Thus, the trial court is afforded considerable latitude in misdemeanor sentencing. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The "*Bise* standard is the appropriate standard of review in misdemeanor sentencing cases." *State v. Gregory Gill*, No. W2018-00331-CCA-R3-CD, 2019 WL 549651, at *16 (Tenn. Crim. App., at Jackson, Feb. 11, 2019) *perm. app. denied* (Tenn. May 16, 2019).

Trial courts are "required ... to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence

is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* T.C.A. § 40-35-114; *see also Bise*, 380 S.W.3d at 701. Moreover, a trial court is "guided by - but not bound by - any applicable enhancement factors when adjusting the length of a sentence [,]" and its "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

In this case, the record reflects that the trial court in sentencing Defendant, considered all appropriate principles set forth in T.C.A. § 40-35-210(b). The trial court applied two enhancement factors, including Defendant's previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, and Defendant, before trial or sentencing failed to comply with the conditions of a sentence involving release into the community. T.C.A. § 40-35-114 (1), (8). The record reflects that the enhancement factors were appropriately applied. Defendant had four prior felony convictions, two of which were used to enhance him to a Range II multiple offender. He also had one prior misdemeanor drug conviction. Defendant had a history of smoking marijuana dating back to 2001, which Defendant admitted. The trial court pointed out that even after Defendant's arrest in this case, and after he posted bond, Defendant continued smoking marijuana until his bond was revoked. The presentence report also reflected that Defendant had previously committed offenses while he was on some type of release into the community. The trial court noted that it gave great weight to Defendant's criminal history. The trial court reviewed the proposed mitigating factors and found that one applied in Defendant's case: that Defendant had remained employed for at least four years. T.C.A. §40-35-113(13).

We conclude that the trial court properly sentenced Defendant. The trial court considered the relevant principles and sentenced Defendant to a within-range sentence for each of his convictions. Defendant essentially argues that the trial court should have sentenced him to the minimum sentence for each of his convictions. However, "[t]he application of a single enhancement factor can justify an enhanced sentence." *State v. John M. Banks*, No. M2019-00017-CCA-R3-CD, 2020 WL 5015888, at *10 (Tenn. Crim. App., at Nashville, Aug. 25, 2020), *perm. app. denied* (Tenn. Dec. 2, 2020) (citing *State v. Bolling*, 75 S.W.3d 418, 421 (Tenn. Crim. App. 2001)). We also point out that the trial court would have been within its discretion to impose a maximum in-range sentence without finding any applicable enhancement factors, "as long as there are reasons consistent with the statutory purposes and principles of sentencing." *State v. Christopher Scott Chapman*, No. M2011-01670-CCA-R3-CD, 2013 WL 1035726, at *9 (Tenn. Crim. App., at Nashville, Mar. 13, 2013), *no perm. app. filed* (citing *Bise*, 380 S.W.3d at 706; *State v. Carter*, 254 S.W.3d 335, 345-46 (Tenn. 2008)); *State v. Richard Tipton*, No. E2011-02354-CCA-R3-CD, 2012 WL 5422272, at *7 (Tenn. Crim. App., at Knoxville, Nov. 7, 2012) *no perm. app. filed* ("the 2005 amendments to the Sentencing Act deleted

appellate review of the mitigating and enhancement factors, so this issue is not appropriate to raise on appeal").  The trial court did not abuse its discretion by sentencing Defendant to an effective sentence of fourteen years.

With respect to consecutive sentencing, our supreme court has held that the standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]"  *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013).  Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> (6) The defendant is sentenced for an offense committed while on probation; or
> (7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b).  In *Pollard*, the court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences."  432 S.W.3d at 862.  "So long as a trial court properly articulates its reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal."  *Id.*; *Bise*, 380 S.W.3d at 705.

- 11 -

Here the record reflects that the trial court in sentencing Defendant found that Defendant is an offender whose record of criminal activity is extensive. T.C.A. § 40-35-115(b)(2). The record supports this finding. As set forth above, Defendant had four prior felony convictions and one misdemeanor conviction. He admitted that he began using marijuana in 2001 and that he continued to use it daily. We cannot conclude that the trial court abused its discretion by ordering partial consecutive sentences in this case.

Finally, Defendant argues that the trial court erred by ordering him to serve his effective sentence in confinement. Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-303(b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

When imposing a sentence of full confinement, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant [.]

T.C.A. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T. C. A. § 40-35-103(2), (4).

As a Range II offender, Defendant in this case was eligible for alternative sentencing, but he was not considered a favorable candidate for alternative sentencing options. T.C.A. § 40-35-102(6). The record supports the trial court's denial of alternative sentencing. The trial court noted that although Defendant's probation in his previous cases had not been revoked, he committed new offenses while on probation in several of those

cases. The trial court also pointed out that Defendant continued to use marijuana daily while on probation in his previous cases, and while on bond in this case. The trial court concluded that Defendant would not "reasonably abide" by the terms of probation. It appears from the record that the trial court denied Defendant's request for alternative sentencing on the fact that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to Defendant. T.C.A. § 40-35-103(C). A trial court may deny alternative sentencing if it finds that any one of the factors found at T.C.A. § 40-35-103 apply. *State v. Christopher Allen*, No. W2016-00505-CCA-R3-CD, 2017 WL 764552, at *4 (Tenn. Crim. App., at Jackson, Feb. 24, 2017) *no perm. app. filed*; *State v. John Anthony Garrett*, No. E2012-01898-CCA-R3-CD, 2013 WL 5373156, at *4 (Tenn. Crim. App., at Knoxville, Sept. 23, 2013) *no. perm. app. filed*. Accordingly, the trial court did not abuse its discretion in ordering Defendant to serve his sentence in confinement.

## CONCLUSION

After a thorough review of the record, we affirm the judgments of the trial court. However, we remand the case to the trial court to correct the clerical error on the judgment forms for counts seven and eight to reflect that Defendant pled guilty to those counts rather than being found guilty by a jury. Additionally, upon remand, the judgment form in count eight should reflect that it is merged with count seven.

_____
JILL BARTEE AYERS, JUDGE

- 13 -